Case number 18-6281, Abilio Hernandez et al. versus Jason Boles et al. Argument not to exceed 15 minutes per side. Mr. Paul Justice, you may proceed for the appellant. Good morning, your honors. Drew Justice for the appellant, Abilio Hernandez and the other three. May it please the court, due to time constraints, I'm going to try to focus on the first issue, which is generally whether the stop was unlawfully extended. In this case, the stop was unlawfully extended because instead of making any diligent effort to prosecute a real traffic stop, these officers spent their entire time performing three consecutive warrants checks interspersed with interrogation of the driver and all the passengers. Not that he was never trying to issue a, never actually trying to charge a traffic violation. And when he was asked, well, why didn't you go ahead and write the ticket after you checked the warrants the first time, I never could get any coherent answer out of it. The only one who did provide any coherent answer was the second officer who just said, well, I was leaving it up to the other officer to write the ticket. So we never could get any clear explanation for. This is the issue that went to trial, right? Yes, Your Honor. So why should we disturb the trial verdict? The basic reason why we should disturb the trial verdict is because we are entitled to judgment as a matter of law because essentially all the facts were undisputed. And due to the fact that basically every fact in the case was undisputed, no reasonable juror could have concluded that this traffic stop was not extended. I said, I used the phrase consecutive records checks. In this case, there were three consecutive records checks. This wasn't like, you know, where you go out, you commit crimes in three different counties, and then your lawyer manages to get you a, work out some, you know, sentence to where you go to prison, you serve time on all three sentences at the same time. These were not concurrent records checks, they were consecutive records checks. And so essentially what you had in this traffic stop was five different stages. Stage one at the beginning, which was about at 11, started about 11.52 a.m., the officer came up, told him, you know, what the stop was about, started the warrants check on the first, on the driver, and also the front passenger. And then stage two, about nine minutes into the stop, after he's already checked the front two people and they've come back clean and all the insurance and everything's good, nine minutes- At that point, everything's okay, right? Yes, yes, your honor. No violation of constitutional rights up to this point? I would say no, there was not, your honor. So they had the right to stop him and make at least an initial check? Absolutely, yes, sir. So you're just talking about the time somewhere in there until- It was- Until they got out of prison, I guess, or jail or whatever. Maybe you're not talking about that. Yes, yes, your honor, yes, that's exactly what we're arguing. We would say the violation started about, I'd say eight minutes into the stop when, I mean, it took him about nine minutes to run, or it took him about seven minutes to run the initial warrants check. We say, that's fine. Everything after that, we asked him, well, why didn't you write a ticket after that? No explanation was ever given. And so basically everything after that we would say was illegal. Stage two, nine minutes into the stop- So they weren't allowed, you're saying they were not allowed to run the second warrant check once it was done, once the first warrant check came back? Right. As a matter of law? Yes, your honor. Are there cases that support that? The cases that support that are basically, the law basically doesn't support running a secondary check, I would say, at all. There was a case from this circuit in 2010, United States v. Smith, where the court did very conclusive, or very briefly, just say that they could run a check on the passenger. And I would say the law now, as of United States v. Rodriguez, 2015, in that case, the Supreme Court specifically said that the purpose of the warrants check is to check the warrants on the driver. And not only did they say that, but they gave a reason why. They said it's to enforce the traffic code. If the driver has ignored citations in the past, then if you just give them another citation, you're not enforcing the traffic code. Would that be the passenger's claim, then? It wouldn't be the driver's claim. I would say it would be all of their claim, because under, I think, Brennan v. California, the overall stop seizes all of the occupants of the car. But I would just submit, we're not primarily talking about whether it was okay to scan the passengers at all, because in this case, you don't even really have to get to that. The problem, we're not even faulting the officer in the first warrants check running the front passenger's warrants at the same time, because he did it at the same time, and we can't really prove that that happened at any time to the stop. The problem comes in where he started doing these consecutive checks. If you say that... Was the second check something that's more comprehensive than the first check, or is it just a duplication? There were basically three checks. Stage one was the front two people. Stage two was he got the driver out for interrogation and interrogated him. Stage three, about 13 or 14 minutes, then he starts interrogating the other passengers of the car. Stage four, 17 minutes in, that's where he begins checking for the first time the back two passengers for warrants. And then stage five, that's where he begins what your Honor asked about, the duplicate check on everyone. The thing is, if two checks are necessary, then you need to go ahead and start those at the beginning. Otherwise, you're not prosecuting a traffic stop diligently. And if you're going to check passengers at all, I submit that's not even really allowed. But if you're going to do it at all, you've got to start it at the beginning. Otherwise, you're not prosecuting a traffic stop diligently. Were your clients all from the particular area in Tennessee, or were they from way off someplace? They were from Florida, Your Honor. They really weren't local. Did they have a Florida tag license on the car? I think so. A driver's license? You're not sure? They did have Florida driver's licenses, I assume, on the car as well. You ask about driver's licenses. The thing is, another reason why it doesn't even really make sense to check passengers for warrants or to run their driver's licenses is passengers aren't driving. You're not going to give them a speeding ticket. And frankly, they may not even be licensed drivers. They may not even have IDs. Address the issue of the dog alerting. You indicate that there's not evidence of the dog alerting, but isn't there a question about what the video shows? There absolutely is a question about what the video shows. The dog handler said that the dog alerts by sitting down. The video, I submit plainly, does not show the dog sitting down at all on the left side of the car, which is where the handler said he sat down. Even though you can't see the video on the other side of the car because the handler said he sat on the left and the video does not show that, then your position is that there was no alert. But then the other thing on that issue, the main point we were arguing with that issue, is that even if the dog somehow alerted, that alert seemed to get canceled out by the point the dog handler is saying, I'm sorry, Donnie, and shaking all the defendant's hands, giving them the thumbs up. So a dissipation of probable cause. Correct. And they spent, I forget exactly how much time it was, but they spent 10 to 20 minutes debating about whether they had any basis to search. Essentially acknowledging that they didn't really think there were drugs in the car, but trying to figure out whether they had any legal grounds to search it in spite of that. What is your best argument for damages beyond the mere invasion of privacy? Basically, our argument on that is that the judge did not address the real legal issue, which is supposed to be proximate cause. I don't believe his oral ruling, which was the only ruling he had that really addressed the issue, I don't think he even used the phrase proximate cause. The Fourth Amendment is not just concerned with privacy, it's also concerned with liberty. But the imprisonment, you're claiming from the prolonged stop, you draw a chain from the not even an illegal search, just the prolongation of the you get to the incarceration? Yes, Your Honor, because the whole purpose, when you look at proximate cause, the main question for proximate cause is foreseeability. It was perfectly foreseeability that these officers would wind up arresting people, because that was the whole purpose of what they were doing. That's the whole purpose of interdiction plus that division of the Tennessee Highway Patrol, is to pull people over for... But isn't the contraband, isn't that why your client is incarcerated? Correct. I mean, it's not the invasion of the privacy per se, right? Absolutely. You're right, it's absolutely not just the invasion of the privacy, but again, the Fourth Amendment isn't just concerned about privacy, it's concerned about freedom. And your best case on that is Mendez? Mendez is a very good one, and I think I also cited Hamilton County Powers v. Hamilton County Public Defender Commission, which talks about the fact that if there's no judge making a bad, basically a judge's bad ruling, a judge's illegal ruling, the judge cuts off the chain of causation. We didn't have that here. And Towns v. City of New York, the defenses case basically talks about the same issue, where they basically said that if there's no chain of causation, then the later seizure is approximately caused by the violation. So that's why they had to create another secondary basis based just on policy concerns, which we oppose. Is there anything in the record or to your knowledge about why there was such a long delay and such a long pretrial incarceration? No, Your Honor. I think we just articulated to the judge in my oral argument below that what happened was the defendants, you know, there's two different stages of prosecution in Tennessee. You don't get discovery at the first stage. Then you have to wait several months for the grand jury to indict and for you to get into court on that. Then you have to wait a little while for the DA to give you discovery. So once they got discovery, then they dismissed the case. You'll have your rebuttal time. Thank you. Good morning. Amanda Jordan here today on behalf of the Apple East, Jason Bowles, and Donnie Clark. The judgment of the district court should be affirmed for two reasons. First, there was sufficient evidence for the jury to conclude that the defendants did not unreasonably prolong the traffic stop in this case. And secondly, the district court's grant of qualified immunity to the defendants with regard to the search of the vehicle was proper as plaintiffs failed to point to any legal authority to show that a dog's alert to the outside of a vehicle but not the inside would fail to provide probable cause for the search. And the defendants also contend that should the court affirm the judgment of the district court, there's no reason to even address the third issue, which is whether or not the district court abused its discretion in limiting plaintiffs' evidence on damages. What's your best case on the damages? He said his was Mendez. You have a good case from the Supreme Court or other courts about it? I think in this case, Your Honor, the Towns case that we cited, although it is a Second Circuit case, is the best case with regard to the damages and even relying on Mendez, which reminds us all that you have to look at the particular claim that is being raised and the damages that proximately flow from that claim. And our argument is that since the defendants were entitled to qualified immunity for the search of the vehicle and that their damages, the arrest and incarceration, arises from the search, that they're precluded from even recovering damages. So even based on approximate cause analysis, it is not foreseeable that any alleged unreasonable delay of the traffic stop gets... What if we reversed on the search? If you reverse on the search, then yes, we would have to touch on that third issue. But are you conceding that the damages from the search would be the lengthy incarceration? I think under Towns it still says no. But like I said, I wasn't able to find an actual Sixth Circuit case on point for that issue, so we might have to fall back to Mendez and to show... Isn't there an implication in Mendez that there is a broad damages kind of concept? Because the court suggests at the end that maybe these were the people that got shot, right, after the unlawful entry, but they don't have the excessive force claim. But there seems to be an implication that they might be able to recover damages for getting shot solely from the unlawful entry, right? Correct, Your Honor. They were finding that if they could show that that unlawful injury was the proximate cause of the... The unlawful entry was the proximate cause of the shooting injuries that they sustained, then yes, they would be entitled to those damages. Right, but even though there was an intervening event with the person pulling a gun and then getting shot and the excessive force and all that, I mean, you're willing to accept a chain of causation that goes back that far? I wasn't able to find a case to say otherwise other than the Towns case that says that for searches and seizures that it is limited directly to the invasion of privacy and you can't get damages for your subsequent arrests and incarceration as the result of officers uncovering incriminating evidence during the search. So I would fall back on that Towns would be... I thought there were other cases other than Towns that supported your position. Am I wrong about that? Towns is the main one that I can think of right now. Okay. And aren't there some cases, perhaps district court cases, train case out of New Mexico that talks about all injuries suffered as a consequence of the deprivations, everything that's foreseeable is recoverable? Yes, I believe that's correct, Your Honor. So going back to the first issue, the district court properly denied plaintiff's Rule 50 motion. In this case, a jury concluded that the defendant's actions during the traffic stop did not unreasonably prolong the duration of that stop and there was sufficient evidence submitted at trial to support that finding. Did you make the argument that you had independent reasonable suspicion to detain the plaintiffs even if the officers inappropriately prolonged the traffic stop? I did not see that argument. No, not at trial, Your Honor. It was argued in our initial motion for summary judgment, but at trial we just stuck with the argument that their actions were not unreasonable. But the district court did find that in addition to there being sufficient evidence to support the jury verdict in this case, that the district court found that there would also be sufficient evidence to support that alternative theory that the officers did have reasonable suspicion. And why haven't you forfeited it by not raising it at the Rule 50 motion? I think that that is, under de novo review, that is something that this court would be able to go back and look at in viewing all the evidence in this case under a de novo review. The testimony at trial explained... Wait, so you didn't argue it in opposition to their Rule 50? You did not, right? I did not, no, because the trial was focused solely on whether it was an unreasonable... And then the judge in his Rule 50 ruling, though, reached it, right? Yes, Your Honor. The defendants testified that after the NCIC results came back negative for that first front driver and the passenger of the vehicle, that it's his common practice during a traffic stop to question a driver. So after the NCIC came back negative, Trooper Bowles went ahead and questioned the driver. Testimony at trial established that this questioning lasted approximately five minutes and that he asked the standard questions that he would ask in any traffic stop, such as where you're going, the purpose of your trip, the days... Wasn't it 20 minutes before they called, is it Block, B-L-O-C, is that how you refer to it as Block? Yes, Your Honor. Wasn't there a 20-minute wait before Block was called? So even, you know, the obvious question being, even if you could or had a right to run it through a second database, when it takes 20 more minutes, why isn't that an improper prolongation of the stop? Your Honor, I think you have to look at the totality of the circumstances surrounding the stop as a whole, and after the questioning of Mr. Hernandez, where he was with the rear passengers in the vehicle with him and was unable to... Well, he identified them by their... By nickname. He didn't know their legal names, correct. And wasn't able to point to the specifics of their travel plans. I think at that point, the officer made the decision that, well, maybe I do need to run this additional Block check. And in all honesty, Your Honor... If you only ask him for five minutes, then where do the extra 15 minutes come in before they do the investigation? Am I missing something on the timing? And I'm not following your question, Your Honor. That they waited 20 minutes before calling Block, and your statement is that there were five minutes of interrogation and the timing is not adding up for me. Yes, Your Honor. Am I missing something? So the questioning of the driver ended at 12.05, and they called Block at 12.13 p.m. So it's a smaller window there. It was 20 minutes from when the NCIC came back negative, but it was really just like seven minutes from when they actually called Block after the email question. Well, what about the length of time between the dog alerting and the manual search? Why isn't that an improper delay? At that point, the dog had probable cause to actually search the vehicle. And then they did with the dog, and he didn't alert, and they said, sorry, fellow officer, that he didn't alert and thumbs up to the people in the car. We're done here. Why isn't that a dissipation of probable cause under our bowling case? In this case, the dog's search on the inside of the vehicle was stopped prematurely because the dog got distracted by a sandwich. So the dog actually did not complete a full sweep of the inside of the vehicle. Well, that's a jury question. That's a jury question. That's not the determination that we had here. Why wouldn't we send this case back under bowling for dissipation of probable cause and allow a jury to tell you whether the dog's search inside the vehicle was sufficient? We go back that the dog's alert to the outside of the vehicle is what gave probable cause for the search. And then the dog went into the vehicle and did, what, three or four minutes of searching there, never alerted, and then of course stopped to have a snack. This is a car. It's not like there's a whole house someone searching. The dog goes in, does not alert throughout that whole search. Then that's the end of that probable cause that authorized the dog to get in, and yet we have the dog coming out, we have delays, we have further discussions, we have the officers calling, and in that time, the officers are saying to one another, I'm sorry, didn't alert, saying to the people inside the car, everything's good, we're done here effectively. Then they go back and have another conversation, and then they do a manual search. Where's the probable cause for that manual search? The probable cause is the dog's alert to the outside of the vehicle. Following failure of another search based on that probable cause. How does that comport with bowling, or our Davis case, that the failure of a dog, sniffing dog, to alert to a car dispels suspicion of drug possession? In this case, Your Honor, I just fall back on that the dog did not do a complete search of the inside of the vehicle. And would you concede that since that is in fact a jury question, that this case should go back down for a jury to make that determination? No, Your Honor, because we stipulated, the jury was made aware that the party stipulated to the fact that the dog handler at 1219 told the officers that the dog alerted to the outside of the vehicle. So at that point... And then what time was the manual search? I'm sorry, what was that? And then what time was the manual search? I'm not sure, Your Honor. Did the plaintiffs ask for a jury instruction about the dissipation of the probable cause, or is that not even covered in the... It wasn't even covered at the trial since the defendants were granted qualified immunity for the search of the vehicle. So the only issue at trial was whether or not the defendant's actions from the initial stop until when the dog alerted to the vehicle was an unreasonable delay. And I would also submit that in the defendant's motion for summary judgment, though, when we were discussing the reliability of the stop, the defendant submitted evidence to show that the drug dog that was used in this particular case was certified through the National Narcotic Detector Dog Association, and that the dog's certifications were current at the time of this particular stop. We also submitted evidence that the dog had not been known to give any false alerts before in the past. And at summary judgment stage, plaintiffs were unable to put forth any evidence that rebutted the dog's certification or his performance in the field. Therefore, at summary judgment... For me, the concern is that's not the only issue. The issue that's before that was not addressed below was the issue of whether probable cause dissipated. And that issue was not raised, and I think, therefore, the plaintiffs have waived that argument. You couldn't reach that because that was decided as a matter of law before trial. Yes, Your Honor. Can you address the argument of damages for pretrial incarceration? Why would that not be a foreseeable approximately caused damage by the constitutional violation of an improper search? As I stated earlier, I think those damages could be the result of the search, and it's the fact that the defendants were granted qualified immunity with regard to the search is why we're saying that the plaintiffs are not entitled to those damages. We don't think that the arrest and incarceration flows from the actual stuff. You couldn't get damages in common law from an illegal search for the prosecution and resulting incarceration, right? I mean, this has never been something that was recognized as even a common law element of damage, was it? I think that's correct, Your Honor. I'm not sure why you would even concede that. I think just from a purely proximate cause analysis, I think if you can show that the damages were proximately caused by that. Why isn't it the case that the contraband is what causes the problem of incarceration and then prosecution? I mean, if you're illegally searched and you don't have something, you're damaged because your privacy is invaded, and if you have something illegal, you're damaged because your privacy was invaded. But in either case, your privacy interest is damaged equally. So why is it that the happenstance of you having contraband then ups the damages? I mean, maybe that's a question for your opponent too, but I'm curious about that. I would think it would just cut off at the search. Well, and I think if it was a malicious prosecution claim that they were raising, then malicious prosecution does get to any detention and incarceration, so those damages would be allowed, and that came up when we were arguing the motions in limine during the pre-trial conference. I still stand by Towns that they are not entitled to any damages because Towns says that you're only entitled to damages relating to that invasion of privacy and not any damages arising from any arrest and subsequent incarceration. Thank you, Your Honors. Regarding the whether you could get damages for this sort of thing at common law, I would suspect not, but that's only because Section 1983 is a statute and it deals specifically with constitutional torts and not with common law. But the Supreme Court has said we look at common law when we're looking at damages, right? I mean, that's Mendez says that, right? Right, and so you would look at, for example, just different common law principles in terms of like the restatement second of torts on what constitutes a superseding cause, that sort of thing. So I would submit you should definitely look at that sort of common law if Your Honors were inclined to do so, but in terms of common law, I mean, there is no common law tort for violating the Fourth Amendment. That's why we made Section 1983. So that's, I would submit that's the answer to that. With regarding whether you should get additional protection because you've committed a crime or something along those lines, I thought Trane made a pretty good argument on that point, which is that just because you get charged with something and held in jail doesn't even necessarily mean you did commit a crime. And in fact, if you were convicted of committing a crime, usually you can't even sue over it because it's pretermitted. For a hypothetical, if your clients had been stopped in all the other circumstances were as they were, but inside the car was two big bricks of heroin. Now, the heroin is seized, and you're saying it's an illegal seizure, but they're put in jail for a period of time until that's resolved. Are they entitled to damages for a period of time in the jail and whatever else they have because of that? If it's a serious crime like a dead body or something like that? Yes, Your Honor, and I would say the seriousness of the crime has nothing to do with whether the Fourth Amendment applies. The Fourth Amendment applies to all crimes, no matter how serious or minor. I understand that for suppression of it, but I'm not sure that you can get damages for possession of something that's clearly illegal and incarceration after that. Well, I think that's the problem that you really have in doing constitutional law claims is if you're representing someone who's been committed a crime, jurors aren't sympathetic to you, judges aren't sympathetic to you, and towns, the judges basically came right out and said that. They said, well, we agree that in addition to the probable cause analysis, we're going to make a separate test just to protect the police on policy grounds because the police are the good guys, and we don't think that criminals need to profit off of illegal searches. And what is your best case and basis for arguing that that's just plain incorrect? It's incorrect now, especially because of Mendez, which was decided, I think, 18 years later or something like that. So does Mendez go that far, or does it really just restate the general rule of torts? Mendez, to some extent, restates but also just clarifies and nails down the general rule, which is that you look at proximate cause, you don't look at what specific, you don't set special rules for specific types of Fourth Amendment claims, you don't set policy rationales to limit damages. So Mendez, I would say, really does debunk that, it really does debunk towns. You could maybe say the judges were reasonable in making that decision 20 years ago in towns, but now with Mendez, I would just say it should be out the window. And I will say when towns was remanded to the Ninth Circuit, they did ultimately give damages for all of it to the plaintiff. I think I cited that in my brief. When Mendez, you're saying Mendez, right? Mendez, yes sir. And just to conclude, I did have one case that I found dealing with the similar, essentially the same issue involving the unlawful stop, and it involved two separate consecutive warrants checks, and that was United States v. Evans, 786 Federal 3rd, 779 from May 2015 in the Ninth Circuit, very clearly stating that when the second warrants check doubles the length of the stop, in that case it was only eight minutes, and they only did two consecutive checks instead of three. And I don't think there was any lengthy interrogation as here. The court said that violated the Fourth Amendment. I'd say the Fourth Amendment was violated here, and very clearly so. We thank you both for your briefing and your arguments. The case will be taken under advisement, and we'll render a decision in due course. Thank you. You may call the next case.